J-A26016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER WILLIAM POPICHAK, | : | |
| | : | |
| Appellant | : | No. 2387 EDA 2021 |

Appeal from the Judgment of Sentence Entered October 22, 2021
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0002162-2020

BEFORE: BOWES, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                                   **FILED JUNE 29, 2023**

Appellant, Christopher William Popichak, appeals from the judgment of

sentence entered in the Chester County Court of Common Pleas, following his

open guilty plea to burglary.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.

The Commonwealth charged Appellant with burglary, criminal trespass, and

theft by unlawful taking in connection with the theft of various items from the

property of Joseph and Rosalie Ilene Hemler ("Victims").  A jury trial

commenced on August 24, 2021.  Prior to the commencement of trial,

Appellant expressed dissatisfaction with his attorney and requested a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3502(a).

continuance to obtain new representation. The court denied Appellant's request, finding that Appellant's issues with his attorney were based on counsel's refusal to file frivolous motions that Appellant asked him to file. On the first day of trial, Victims testified by video. Mrs. Hemler, who was 77 years old at the time of trial, testified that Appellant's grandmother was one of her best friends and because of this connection, Mr. Hemler hired Appellant to do work on their property when Appellant was having difficulty finding a job. Mr. Hemler, who was 80 years old at the time of trial, testified that Appellant worked for him on and off for a few months, doing yard work and clearing out stockpiled tools and spare parts that had accumulated on his property from his years of working as a mechanic and electrician. The spare supplies were kept in Mr. Hemler's shop, which was located in a separate structure from their residence. The shop was generally kept locked but was always open when Appellant came to work so that he could access tools and supplies to do his work. Appellant did not do any work inside the house except one instance when he helped move a piece of furniture down the stairs. Victims did not give Appellant permission to enter their residence freely and Appellant always knocked on the door before entering. Victims gave Appellant permission to use the bathroom that was located right inside the entrance to the house from the garage but Appellant always informed Mr. Hemler prior to doing so.

On April 6, 2020, Mr. Hemler asked Appellant to come to the property to help him tear down an old generator in order to dispose of it. Shortly after

lunch, Mr. Hemler got a call and needed to leave the property to run an errand. Prior to leaving, Mr. Hemler showed Appellant which parts to remove from the generator and instructed Appellant to continue working while he was gone. Mr. Hemler expected that the work would take Appellant the whole day and into the next day. Approximately 20 to 30 minutes after he left, Mr. Hemler received a call from Appellant stating that he completed the work. Mr. Hemler told Appellant that additional panels needed to be removed from the generator and instructed him to continue working.

Mrs. Hemler testified that on the afternoon of April 6, 2020, she was working on a puzzle in a room on the second floor of her house when Appellant unexpectedly entered the room. She found his presence upstairs strange because she did not hear him knock and did not permit him to enter the house. However, she did not ask him to leave because he was her friend's grandson. Appellant informed her that he finished the work that Mr. Hemler gave him and asked if there was anything else for him to do. She told him that he could leave if he had completed his work. Appellant asked Mrs. Hemler if there was a bathroom on the second floor. After Mrs. Helmer told Appellant where the bathroom was located, Appellant was out of her line of sight on the second floor for several minutes before he left. Victims' bedroom and their son's bedroom was located on the second floor and the doors to the bedrooms were typically kept shut.

Mr. Hemler testified that he returned to his property at approximately

5:30 P.M. that evening and Appellant was not present on the property.  Mr. Hemler checked on the generator that Appellant was asked to work on and noted that Appellant did not remove any parts from the generator except some copper bars and copper wires.  The next morning, Appellant texted Mr. Hemler that he was sick.  The following day, Appellant arrived at the property and Mr. Hemler asked him to do some light yard work because it was expected to rain.

While Appellant was on the property on April 8, 2020, Victims' son, Todd Hemler, returned home after being away for a few days and noticed that the coin jar in his room was missing.  He checked the house and noticed that the larger coin jar located in Mr. Helmer's downstairs office was also missing. Victims confirmed that Appellant was the only other individual who had entered the house recently.  Victims called the police and Appellant was questioned by the officers.  Appellant left the property after being questioned and returned later in the day.  Appellant walked up to Mr. Hemler and attempted to give Mr. Hemler an envelope containing $900.00.  Appellant stated that he did not steal anything but wanted Mr. Hemler to have the money.  Mr. Hemler testified that he refused to accept the envelope and immediately informed the police about the encounter.  Additionally, the Commonwealth admitted into evidence a property receipt from a scrapyard and Mr. Hemler identified items on the receipt which were from his shop, taken without his knowledge or permission.

After the first day of trial, Appellant had a phone conversation with his

grandmother from prison, which was recorded. In the conversation, Appellant told his grandmother to state on the witness stand that Appellant was locked up for 13 months without bail for a crime he did not commit in order to cause a mistrial. When his grandmother stated that she would not do so, Appellant said he would take matters into his own hands. The next morning, prior to the commencement of the second day of testimony, the Commonwealth informed Appellant of their knowledge of this phone call and sent troopers to interview Appellant's grandmother about the conversation. After some negotiations, Appellant agreed to enter an open guilty plea to burglary and the Commonwealth agreed not to seek a minimum sentence above the bottom of the standard guideline sentencing range, which was 48 months' imprisonment.

The court conducted a colloquy with Appellant regarding his open guilty plea to ensure that his plea was knowing, voluntary and intelligent. The court explained to Appellant that although the Commonwealth agreed not to seek a minimum sentence higher than 48 months, the court was not bound by the Commonwealth's position. Appellant indicated that he understood. Additionally, the court specifically asked Appellant if he was satisfied with his attorney's representation in his plea negotiation considering his prior claim of dissatisfaction with his counsel. Appellant indicated that he was satisfied with counsel's representation, had time to discuss his plea with counsel, and had no questions about the rights he was giving up by entering a guilty plea.

Satisfied that Appellant's plea was knowing, voluntary, and intelligent, the court accepted Appellant's open guilty plea on August 25, 2021, and ordered a pre-sentence investigation("PSI") report.

Appellant filed a *pro se* motion to withdraw guilty plea on September 3, 2021. Appellant retained new counsel, who entered his appearance on September 7, 2021, and filed a counseled motion to withdraw the guilty plea on September 16, 2021. The court held a hearing on the motion on October 1, 2021. Appellant testified that he was innocent of the crime and felt pressured to plead guilty because his prior counsel was not properly prepared to defend him at trial and failed to pursue viable defenses. The Commonwealth introduced the transcript of the phone conversation Appellant had with his grandmother regarding Appellant's attempt to cause a mistrial as evidence that Appellant made a knowing, voluntary and intelligent decision to plead guilty after being confronted with the weight of the evidence against him. The Commonwealth further argued that it would be prejudiced by Appellant's withdrawal of the guilty plea because a full day of testimony had already taken place in front of a jury prior to Appellant's plea. On October 7, 2021, the court denied Appellant's pre-sentence motion to withdraw the guilty plea.

On October 22, 2021, the court conducted a sentencing hearing. The Commonwealth refrained from making any sentencing recommendation, and the court sentenced Appellant to an aggravated range sentence of six to

fifteen years of incarceration. On October 26, 2021, Appellant filed a motion for reconsideration of sentence and a second motion to withdraw the guilty plea. Appellant filed a third motion to withdraw the guilty plea on October 28, 2021. The court denied all three motions on November 8, 2021. Appellant filed a timely notice of appeal on November 17, 2021. The court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on November 19, 2021, and Appellant timely complied on December 3, 2021.

Appellant raises the following issues for our review:

> 1) Did the trial court abuse its discretion in refusing to allow Appellant to withdraw his plea of guilty to the charge of burglary prior to sentencing, when there was no real prejudice to the Commonwealth, Appellant asserted his innocence, and there were viable defenses to the charges against him?
>
> 2) Did the trial court abuse its discretion in refusing to allow Appellant to withdraw his plea of guilty to the charge of burglary after sentencing, when the court sentenced Appellant to a much higher sentence than the sentence that the Commonwealth agreed to recommend at the time of the open plea?
>
> 3) Did the court abuse its discretion in issuing an excessive sentence of six to fifteen years of incarceration on the charge of burglary, which is above the standard sentencing range and fails to consider Appellant's rehabilitative needs and the needs of his elderly grandparents who rely on Appellant for care?

(Appellant's Brief at 14-17) (re-worded for clarity).

In his first issue on appeal, Appellant alleges that he is innocent in this matter and only entered a guilty plea to burglary because his original trial

counsel was unprepared for trial. Appellant asserts that he attempted to obtain new counsel prior to the commencement of trial because trial counsel did not properly evaluate and pursue viable defenses to the charge of burglary. Appellant argues that he had permission to be on Victims' property and there were other individuals who had access to the property who had a history of stealing items from Victims. Appellant further contends that there was no real prejudice to the Commonwealth to granting the pre-sentence motion to withdraw his guilty plea because the only testimony that was presented prior to the entry of the plea was the pre-recorded video testimony of Victims. Appellant submits that he established a plausible assertion of innocence and there was no substantial prejudice to the Commonwealth. Appellant concludes that under these circumstances, the court abused its discretion in refusing to allow Appellant to withdraw his guilty plea prior to sentencing, and this Court should vacate the judgment of sentence and remand for further proceedings. We disagree.

Our review of the denial of a pre-sentence motion to withdraw a guilty plea implicates the following principles:

> [W]e recognize that at "any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty." Pa.R.Crim.P 591(A). The Supreme Court of Pennsylvania recently clarified the standard of review for considering a trial court's decision regarding a defendant's pre-sentence motion to withdraw a guilty plea:

> Trial courts have discretion in determining whether a withdrawal request will be granted; such discretion is to be administered liberally in favor of the accused; and any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth.
>
> ***Commonwealth v. Carrasquillo***, 631 Pa. 692, [704,] 115 A.3d 1284, 1285, 1291-92 (2015) (holding there is no *per se* rule regarding pre-sentence request to withdraw a plea, and bare assertion of innocence is not a sufficient reason to require a court to grant such request). We will disturb a trial court's decision on a request to withdraw a guilty plea only if we conclude that the trial court abused its discretion. ***Commonwealth v. Gordy***, 73 A.3d 620, 624 (Pa.Super. 2013)[, *appeal denied*, 624 Pa. 687, 87 A.3d 318 (2014)].

***Commonwealth v. Davis***, 191 A.3d 883, 888-89 (Pa.Super. 2018), *appeal denied*, 650 Pa. 308, 200 A.3d 2 (2019).

> [A] defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea. More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice.

***Carrasquillo, supra*** at 705-06, 115 A.3d at 1292 (internal citation omitted). (explaining that court should consider plausibility and sincerity of defendant's assertion of innocence, as well as circumstances surrounding pre-sentence motion to withdraw plea, including motivation and timing of request). "[B]oth the timing and the nature of the innocence claim, along with the relationship of that claim to the strength of the government's evidence, are relevant." ***Commonwealth v. Islas***, 156 A.3d 1185, 1190 (Pa.Super. 2017).

Additionally, a defendant's failure to establish a plausible claim of innocence renders unnecessary a consideration of whether pre-sentence withdrawal of the guilty plea would substantially prejudice the Commonwealth. *Carrasqullio, supra* at 706 n.9, 115 A.3d at 1293 n.9 (declining to address prejudice to Commonwealth, because defendant failed to assert plausible claim of innocence); *Commonwealth v. Hvizda*, 632 Pa. 3, 9, 116 A.3d 1103, 1107 (2015) (holding pre-sentence request to withdraw plea failed where defendant made only bare assertion of innocence).

Instantly, the trial court set forth its reasons for denying Appellant's pre-sentence motion to withdraw the guilty plea as follows:

> In this case, a full day of trial on this matter had already occurred when [Appellant] decided to accept a plea. The jury was present and waiting for the second day of the trial to begin. Approximately half of the Commonwealth's case was already completed, and the Commonwealth was ready to proceed with the rest of the trial. All remaining Commonwealth witnesses were in the courthouse waiting for their turn to testify. It was clear that the case against [Appellant] was very strong. The evidence included videotaped trial testimony of the victims, video from the scrap metal place where [Appellant] sold the items he stole from the Hemlers, and testimony showing that [Appellant] attempted to pay back $900 to the Hemlers. The Commonwealth also had videotaped evidence of [Appellant] at a Coinstar machine on the day the coins were stolen from the Hemlers in which he cashed in over $500 worth of coins, which is the amount the Hemlers estimated were in the coin-filled containers that were stolen from their house. Phone records further showed that [Appellant] was in the area of the Coinstar machine on April 6, 2020, and was in the area of the scrap metal place the following day. Based on the overwhelming evidence against [Appellant], it was clear that he would be convicted of the crimes charged.

In order to avoid the inevitable, and to negotiate the maximum amount of time that he would spend in prison, [Appellant] decided to accept a plea. Prior to accepting the plea, [Appellant] testified that he was satisfied with the services provided to him by his attorney and that he did, in fact, commit the crime to which he was pleading guilty.

\* \* \*

The court … notes that prior to trial commencing, [Appellant] expressed some dissatisfaction with his attorney. The court believes that his trial counsel would not file meritless motions requested by [Appellant], leading to some of his dissatisfaction. The court further believes that [Appellant] was alleging dissatisfaction with his attorney in order to delay trial. [Appellant] and his attorney were given time to talk and afterward, [Appellant] decided to continue working with his attorney. He testified that he was satisfied with his attorney when he entered into his plea.

\* \* \*

The court believes that [Appellant]'s attempt to withdraw his guilty plea is a tactic he is using to delay the inevitable…. It is clear that [Appellant] was going to do anything he could in order to delay the trial of this matter. A blaring example of this is documented in a prison phone call with his grandmother after the first day of trial…. He was trying to intentionally cause a mistrial after the court denied his attempt to fire his attorney the morning of his trial. When his grandmother refused to go along with his plan, he decided to plead guilty. While [Appellant] is attempting to claim that he is innocent of the charges against him, the court finds his testimony completely not credible, especially in light of the strong evidence against him and his repeated attempts to delay trial at any cost. The court believes that [Appellant] accepted a plea with the intention of withdrawing it later so that he could delay having a jury deliberate on the charges against him.

(Trial Court Order and Opinion, filed 10/7/21, at 2-4).

We agree with the court's analysis. Appellant's assertions that trial

counsel was unprepared and failed to pursue viable defenses are belied by the record. Trial counsel vigorously cross-examined Victims regarding whether Appellant had permission to enter their residence, inquiring whether Appellant was permitted to enter freely to use the bathroom and whether Mrs. Hemler asked Appellant to leave when she discovered him inside the house. Additionally, trial counsel's questions resulted in admissions from Victims that they believed that their grandson and Todd's girlfriend's son had taken items from their property on prior occasions. The record clearly demonstrates that trial counsel was pursuing the very defenses that Appellant now claims support his assertion of innocence.

Nevertheless, as the trial court properly noted, the evidence against Appellant was overwhelming. Victims consistently testified that although they asked Appellant to work on the property, they did not give him permission to enter the residence without invitation. Additionally, Victims testified that neither their grandson nor Todd's girlfriend's son was on their property at the time that the money jars went missing. Further, the Commonwealth had video footage and cell phone records that connected Appellant to the sale of the missing items from Victims' home. Based on the strength of the evidence against Appellant, we agree with the court that Appellant failed to demonstrate a plausible claim of innocence. *See Carrasquillo, supra*; *Islas, supra*.

Additionally, the court did not find Appellant's claim of innocence credible in light of the circumstances surrounding Appellant's request to

withdraw his plea. Appellant implored the court to postpone trial by requesting new counsel on the morning that trial was set to begin. When the court refused to do so, Appellant asked his grandmother to make statements on the stand to cause a mistrial. When his grandmother refused to do so and Appellant was confronted by the Commonwealth with evidence of his recorded phone call, Appellant entered into a guilty plea that he subsequently attempted to withdraw. On this record, we discern no error in the court's determination that Appellant failed to demonstrate a fair and just reason to withdraw his guilty plea because his claims of innocence were insincere and motivated by a desire to delay court proceedings. *See Carrasquillo, supra*; *Davis, supra*; *Islas, supra*. Appellant's failure to establish a plausible claim of innocence renders unnecessary a consideration of a prejudice analysis. *See Carrasquillo, supra, supra*. Therefore, Appellant's first issue on appeal merits no relief.

In his second issue on appeal, Appellant asserts that the Commonwealth agreed at the time of the guilty plea that it would not recommend a sentence longer than 48 months' imprisonment. Appellant argues that the court was either required to abide by the sentence recommendation or allow Appellant to withdraw his plea. Appellant contends that the fact that Appellant entered an open plea rather than a negotiated plea is a "distinction without a difference" and the court should be bound by the sentence recommendation of the Commonwealth. Appellant avers that the guilty plea colloquy that

Appellant signed "clearly says that if the judge does not accept the recommendation, the plea can be withdrawn." (Appellant's Brief at 69). Appellant concludes that the court abused its discretion by refusing to permit Appellant to withdraw his plea when it imposed a longer sentence than the Commonwealth agreed to recommend. We disagree.

This Court has explained:

> [P]ost-sentence motions for withdrawal [of a guilty plea] are subject to higher scrutiny [than pre-sentence motions to withdraw a plea] since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily.

*Commonwealth v. Kehr*, 180 A.3d 754, 756-57 (Pa.Super. 2018) (citation omitted).

Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing and bears the burden of proving otherwise. *Commonwealth v. Pollard*, 832 A.2d 517 (Pa.Super. 2003). A defendant who decides to plead guilty is bound by the statements he makes while under oath, "and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." *Id.* at 523. "Our law does not require that a defendant be totally pleased with the outcome of his decision to plead guilty, only that his decision be voluntary, knowing and intelligent." *Id.* at 524.

Here, at the outset we note that Appellant's written guilty plea colloquy

makes clear that Appellant was entering an open guilty plea and not a negotiated plea agreement. In other words, there was no agreement by the parties as to the sentence in this case. Rather, the Commonwealth's only agreement was that it would "not ask for time above the bottom of the standard guideline range-48 months." (Guilty Plea Colloquy, filed 8/25/21, at 3). Appellant seems to misinterpret this provision of his guilty plea as the Commonwealth agreeing to recommend a minimum sentence of **no longer** than 48 months' imprisonment. Nevertheless, the fact that the Commonwealth agreed not to seek a minimum sentence above 48 months' imprisonment, is not the same as the Commonwealth asking the court to impose a minimum sentence of no greater than 48 months' imprisonment or even recommending a minimum sentence of 48 months' imprisonment. The Commonwealth stood by its position not to seek a minimum sentence greater than 48 months' imprisonment. In fact, the Commonwealth ultimately stood silent regarding any sentencing recommendation. As Appellant's argument is largely predicated on this misinterpretation, he is not entitled to relief on his second issue on appeal.

Further, the written plea colloquy states that "[i]n pronouncing sentence, the court must consider, BUT IS NOT BOUND BY, the guidelines issued by the Pennsylvania Commission on Sentencing." (Guilty Plea Colloquy, filed 8/25/21, at 8) (capitalization in original). At the plea hearing, the court ensured that Appellant understood this provision:

The Court: Do you understand the guidelines are what they sound like, they're suggestions to the judge of what the sentence should be?

[Appellant]: Yes.

The Court: And if I want to sentence above what the suggestion is or I want to sentence below what the suggestion is, I listen to the arguments of counsel, but I just explain what I'm doing. Okay?

[Appellant]: Yes.

(N.T. Plea Hearing, 8/25/21, at 5).

Thus, Appellant acknowledged that the court had sentencing discretion in this case and was not bound by the arguments of counsel or the sentencing guidelines. The record discloses that Appellant made a voluntary, knowing and intelligent decision to enter an open guilty plea. ***See Pollard, supra***. Accordingly, Appellant's claim that the court abused its discretion in denying his post-sentence motion to withdraw his guilty plea is meritless. ***See Kehr, supra***.

In his third issue, Appellant argues that the sentence of 6 to 15 years of incarceration is excessive as it greatly exceeds the standard sentencing range, which is 48 to 60 months' incarceration in this case. Appellant asserts that the court failed to adequately state its reasons for exceeding the standard guidelines. Appellant contends that the court failed to consider Appellant's rehabilitative needs. Appellant claims the court ignored mitigating factors such as the care Appellant provides for his elderly grandparents, and Appellant's willingness to seek psychological help and pursue vocational

- 16 -

education. Appellant concludes the court abused its discretion by imposing an excessive sentence that did not properly weigh Appellant's rehabilitative needs or consider mitigating factors, and this Court should vacate and remand for resentencing. We disagree.

As presented, Appellant's claim challenges the discretionary aspects of sentencing. *See Commonwealth v. Clarke*, 70 A.3d 1281 (Pa.Super. 2013), *appeal denied*, 624 Pa. 671, 85 A.3d 481 (2014) (stating contention that court focused solely on serious nature of crime without adequately considering protection of public or defendant's rehabilitative needs concerns court's sentencing discretion); *Commonwealth v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing); *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa.Super. 1995), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (explaining claim that court did not consider mitigating factors challenges discretionary aspects of sentencing).

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify

sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting ***Commonwealth v. Hyland***, 875 A.2d 1175, 1183 (Pa.Super. 2005)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. ***Commonwealth v. Mouzon***, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." ***Phillips, supra*** at 112 (emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa.Super. 2003). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing

process." ***Commonwealth v. Caldwell***, 117 A.3d 763, 768 (Pa.Super. 2015) (*en banc*) (quoting ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa.Super. 2011)).

"[A]n excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa.Super. 2014), *appeal denied*, 629 Pa. 636, 105 A.3d 736 (2014). ***See also Commonwealth v. Trimble***, 615 A.2d 48 (Pa.Super. 1992) (holding defendant's claim that court failed to consider factors set forth under Section 9721(b) and focused solely on seriousness of defendant's offense raised substantial question). A substantial question also exists where an appellant alleges the court imposed a sentence outside of the guidelines without specifying sufficient reasons. ***Commonwealth v. Holiday***, 954 A.2d 6 (Pa.Super. 2008), *appeal denied*, 601 Pa. 694, 972 A.2d 520 (2009)

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

***Commonwealth v. McNabb***, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting ***Commonwealth v. Hess***, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

"[A] court is required to consider the particular circumstances of the offense and the character of the defendant." ***Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S. Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." ***Id.*** If the sentencing court has the benefit of a PSI report, the law presumes the court was aware of the relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors. ***Commonwealth v. Tirado***, 870 A.2d 362 (Pa.Super. 2005).

When considering the propriety of imposing an aggravated range sentence, this Court has observed:

> [T]he guidelines were implemented to create greater consistency and rationality in sentencing. The guidelines accomplish the above purposes by providing a normal for comparison, *i.e.*, the standard range of punishment, for the panoply of crimes found in the crimes code and by providing a scale of progressively greater punishment as the gravity of the offense increases….
>
> The provision of a "norm" also strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history that deviates from the norm and must be regarded as not within the guidelines contemplation. Given this predicate, simply indicating that an offense is a serious, heinous or grave offense misplaces the proper focus. The focus should not be upon the seriousness, heinousness or egregiousness of the offense generally speaking, but, rather upon how the present case deviates from what might be

regarded as a "typical" or "normal" case of the offense under consideration.

An aggravated range sentence … will thus be justified to the extent that the individual circumstances of [an appellant's] case are atypical of the crime for which [he] was convicted, such that a more severe punishment is appropriate.

***Commonwealth v. Fullin***, 892 A.2d 843, 848 (Pa.Super. 2006) (internal citation omitted).

Instantly, Appellant raised his sentencing issue in a timely post-sentence motion, timely notice of appeal, and in his Rule 2119(f) statement. Further, Appellant's assertion that the sentence was manifestly excessive in conjunction with his claim that the court failed to weigh his rehabilitative needs and/or consider mitigating factors raises a substantial question. ***See Raven, supra***; ***Trimble, supra***. Appellant's claim that the court also failed to set forth adequate reasons for imposition of the aggravated-range sentence also raises a substantial question for our review. ***See Holiday, supra***. Accordingly, we proceed to address the merits of Appellant's sentencing claims.

Here, the court had the benefit of a PSI report, defense counsel's arguments, and statements from Appellant and his grandmother at sentencing. Thus, we can presume that the court was fully aware of and considered mitigating factors such as Appellant's role in caring for his grandparents and his expressed willingness to seek psychological help and vocational education. ***See Tirado, supra***. Further, contrary to Appellant's

assertion, the court provided an on-the-record statement of reasons why it imposed a sentence in the aggravated range of the sentencing guidelines. The court noted Appellant's extensive criminal history which included multiple prior convictions for burglary. Appellant was on parole for a prior burglary conviction at the time that he committed the instant offense and has a history of repeated probation and parole violations. Appellant also attempted to have his grandmother cause a mistrial in this case, demonstrating a disregard for the judicial process and an unwillingness to take accountability for his actions. The court additionally considered the impact Appellant's actions had on his elderly victims who gave Appellant a job at their property at the request of a close friend. Mrs. Hemler stated that she was devastated at the loss of her friendship with Appellant's grandmother following this incident, and Appellant's actions destroyed Victims' sense of security. The court further noted that Appellant failed to express any remorse for his actions, declining to address Victims when given the opportunity to do so. The record demonstrates that the court considered Appellant's rehabilitative needs but determined that his potential for rehabilitation was low and outweighed by the need to protect the public based on his criminal record, repeated violations of probation and parole, and lack of remorse towards the elderly victims. On this record, we discern no abuse of discretion in court's determination that a sentence in the aggravated range was appropriate. *See Fullin, supra*; *McNabb, supra*. Accordingly, Appellant is not entitled to relief on his

challenge to the discretionary aspects of sentencing, and we affirm.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *6/29/2023*